UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRYAN WEST, et al

        Plaintiffs

v.                                                      Case No. 1:13-cv-99-HJW

CARPENTERS' LOCAL UNION NO. 136, et al

        Defendants

### ORDER

Pending is the defendants' "Motion to Dismiss" (doc. no. 6), which plaintiffs oppose. Having fully considered the pleadings, the parties' briefs, and applicable authority, the Court will <u>grant</u> the motion for the following reasons:

**I.  Factual Allegations and Procedural History**

The allegations of the Complaint are summarized as follows: Plaintiffs Bryan West and Peter McCarthy are former officers of Carpenters' Local Union 113 ("Local 113"), the predecessor of defendant Carpenters' Local Union 136 ("Local 136") (doc. no. 1, ¶¶ 1-3). The defendant Indiana/Kentucky/Ohio Regional Council of Carpenters ("IKORCC") is the successor to the previous Ohio & Vicinity Regional Council of Carpenters ("Ohio Regional Council") (¶ 4).

In March 2005, West was appointed treasurer of Local 113 (¶ 8). The previous treasurer was convicted of embezzling union funds. In June of 2006, West was elected treasurer of Local 113, and McCarthy was elected vice-president (¶ 9). In spring of 2008, the president of Local 113 resigned, and McCarthy became president (¶ 10). West was appointed to head the Audit Committee (¶ 11). Meanwhile, in spring of 2007, the plaintiffs were nominated to

run for open delegate positions (¶ 13). They protested alleged election violations, but did not timely file the protest (¶ 14). They filed additional election protests and an NLRB unfair labor practice charge against the Ohio Regional Council and its agent David Wilkerson, for allegedly "threatening the membership with interference in the job referral process" (¶ 15). Plaintiffs allege that after they "forcefully expressed their views regarding union policies and asserted their rights to free and fair elections," they did not receive any more "substantial" work referrals from the union hiring hall administered by the Council (¶¶ 11, 16).

In the union election of June 2009, McCarthy ran for re-election as president against Wilkerson, but did not win (¶ 18). West had moved out of state and did not seek re-election as treasurer. West alleges he was "forced" to move to find work as a union carpenter. He characterizes the lack of work referrals from the union hiring hall as "retaliatory behavior of agents and officers" of Local 113 and the Ohio Regional Council (¶ 17). McCarthy also alleges he was "forced" to take early retirement in 2010 due to a lack of work referrals (¶¶ 18, 35).

When stepping down as treasurer in June of 2009, West requested an audit of the financial records of Local 113 "due to the embezzlement affair of his predecessor in office" (¶ 19). West withheld union financial documents and refused to provide them to the newly-elected union officers. In January 2010, David Wilkerson (president of Local 113) and Claudio Vincent (treasurer) filed charges with the Ohio Regional Council against West and McCarthy, alleging they had "cause[d] dissension among the members of the United Brotherhood" and "violat[ed] the obligation" under Section 51 of the Carpenters' Constitution (¶ 20).

A union trial was held in November 2010 and included documents that McCarthy and West had previously filed with the OLMS of the Labor Department, the NLRB, and the International Office of the Carpenters' Union (¶ 22). Plaintiffs allege that, prior to the union trial, the Cincinnati office of OLMS seized the records of Local 113 because the union has not filed its required LM-3 report (¶ 23). On February 12, 2011, the union found West guilty of violating § 51(A)(1) ("causing dissension") of the Carpenters' Constitution, and fined $1,250.00, but found him not guilty of violating § 51(A)(13) ("violating the obligation") (¶ 24). McCarthy was found not guilty (¶ 25). West appealed, and on February 20, 2012, the Appeals Committee reversed the guilty finding and vacated the fine (¶ 26).

In early 2011, McCarthy allegedly requested an application for the position of agent/organizer from Ohio Regional Council President Robert Peto's secretary at the Council's main office in Cleveland (¶¶ 29-30). Plaintiffs allege that although McCarthy was assured several times that an application would be sent, he did not receive one. He describes this as a "refusal" to send him an application (¶¶ 29-30). On February 1, 2012, West sent a resume for open positions, but received no reply (¶ 32). Plaintiffs complain that they were not referred work out of the union hiring hall once they began "exercising their rights under the LMRDA" and disputing allegedly "inappropriate behavior" (¶ 33). Plaintiffs allege that their earnings declined 30-40% during the period they were challenging the delegate election (¶¶ 34-35).

On February 8, 2013, plaintiffs filed a federal complaint, alleging violation of Section 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"),

29 U.S.C. § 529, by Local 136 and the IKORCC, which are the successor organizations to Local 113 and the Ohio Regional Council. The defendants have filed a motion to dismiss for failure to state a claim for which relief may be granted (doc. no. 6). Defendants attach the NLRB's decision (Case 9-CB-12498) on West's charge that the union had violated the LMRDA by bringing the internal union charges against him (doc. no. 6-1, Ex. A, finding that "the union did not violate the LMRDA in any manner alleged in the complaint" and that this was a dispute about the "financial records"). This matter is fully briefed and ripe for consideration.

**II. Standard of Review: Rule 12(b)(6)**

Motions to dismiss pursuant to Rule 12(b)(6) test the sufficiency of a complaint, and the first step is to identify any conclusory allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

For purposes of Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A court need not accept as true "a legal conclusion couched as a factual allegation." Twombly, 550

U.S. at 555. A court must focus on whether the plaintiff is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Id.

Although courts generally do not consider matters outside the pleadings when reviewing a complaint for legal sufficiency, a court may consider exhibits attached to the pleadings, if the documents are referenced therein and are central to the plaintiff's claims. Nixon v. Wilmington Trust Co., 543 F.3d 354, 357 (6th Cir. 2008). Federal courts may take judicial notice of public records, such as court dockets and federal agency decisions. See Shuttlesworth v. Birmingham, 394 U.S. 147, 157 n. 6 (1969); Toth v. Grand Truck R.R., 306 F.3d 335, 348 (6th Cir. 2002); Saylor v. United States, 315 F.3d 664, 667-68 (6th Cir. 2003); 5C Wright & Miller, Fed. Prac. & Proc.: Civil 3d §§ 1364, 1366 (3d ed. 2004).

### III. Relevant Law

The Labor-Management Reporting and Disclosure Act ("LMRDA") was enacted in 1959 "in response to the perceived abuses that plagued labor relations and undermined public confidence in the labor movement." Becker v. Indust'l Union of Marine and Shipbldg. Workers of Am., AFL–CIO, 900 F.2d 761, 766 (4th Cir. 1990). The statute was intended to address substantive abuses while "minimizing governmental interference with the internal affairs of labor organizations." Id. at 766–767; see also, Int'l Bhd. of Teamsters v. Local Union No. 810, 19 F.3d 786, 793 (2d Cir. 1994) (observing that LMRDA "is not to be read as an open invitation to federal courts to busy themselves with the internal affairs of unions"). As the congressional McClellan Committee indicated, the primary goal

of the legislation was to "insure union democracy." Id.; see also, Satink v. Hoffa, 2005 WL 2007250, *11 (N.D.Ohio) (citing Mason Tenders Dist. Council of Greater N.Y. v. Laborers' Int'l Union of N. A.M., 884 F.Supp. 823, 838 (S.D.N.Y.1995) (the "LMRDA was enacted to preserve and protect, among other things, a local union's fundamental right of self-determination")).

Plaintiffs bring their LMRDA claim under 29 U.S.C. § 529, which provides:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

## IV. Discussion

In their Complaint, the plaintiffs do not allege that they were fined, suspended, or expelled from the union. They bring their claim under the "otherwise disciplined" language, contending that the "defendants' conduct in reducing or eliminating referral out of the union hiring hall to plaintiffs, in filing charges and conducting a trial against plaintiffs, and in refusing to consider their applications for the agent/organizer positions, violates the LMRDA" (doc. no. 1, ¶ 39).

The defendant union and council move for dismissal on four grounds: 1) the alleged conduct does not constitute "discipline" within the meaning of 29 U.S.C. § 529, and thus, the Complaint fails to state a claim as a matter of law; 2) any claim based on the alleged lack of "job referrals" in 2007-2010 is time-barred by the applicable two-year statute of limitations; 3) the NLRB has already

determined that the union brought the January 2010 internal charges against West for non-retaliatory reasons, and therefore, collateral estopped precludes the plaintiffs from alleging retaliation based on the same facts here;[1] and 4) the Complaint makes no allegations against Local 136.

### A. Whether the Alleged Conduct Constitutes a Violation of 29 U.S.C. § 529

Plaintiffs contend that McCarthy did not receive a job application that he requested from a secretary at the council's main office in Cleveland, that McCarthy and West were not hired for internal union jobs, and that they were not referred "substantial" work through the union hiring hall. They contend that this alleged conduct was in retaliation for exercising their rights under LMRDA and amounted to "discipline" under 29 U.S.C. § 529. Defendants deny any retaliatory conduct, but assert that even taken as true for purposes of Rule 12(b)(6), the plaintiffs' allegations fail to state a claim for violation of 29 U.S.C. § 529. Defendants assert that, based on binding Supreme Court precedent, the alleged conduct does not, as a matter of law, constitute "discipline" within the meaning of LMRDA.

First, with respect to the allegations that an employee of the union did not mail a job application to McCarthy and that the union did not hire either plaintiff for an internal union job as a business agent, the defendants cite the United States Supreme Court's decision in <u>Finnegan v. Leu</u>, 456 U.S. 431 (1982) for the proposition that such conduct does not amount to "discipline" within the

---

[1] The NLRB found that this was a dispute over financial records that West, who was no longer an officer, was withholding from Local 113, which needed the documents in order to file certain mandatory reports.

meaning of the LMRDA. In Finnegan, the incumbent union president lost the election and the newly-elected union president terminated the employment of several appointed agents (who had campaigned for the incumbent) and appointed his own staff. The Supreme Court held that their discharge did not violate Title I and explained that the term "discipline," as referenced in LMRDA, referred "only to retaliatory actions that affect a union member's rights or status as a member of the union." Id. at 437-38. The Supreme Court explained that "the three disciplinary sanctions specifically enumerated -- fine, suspension, and expulsion -- are all punitive actions taken against union members as members." Id. The LMRDA "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." Id.; see also, Tucker v. Bieber, 900 F.2d 973, 978 (6th Cir.), cert. denied, 498 U.S. 848 (1990) (emphasizing that "Title I did not create a system of job security or tenure for appointed union employees") (quoting Finnegan, 456 U.S. at 438)).

Based on Finnegan and its progeny, the defendants correctly assert that neither West nor McCarthy were "disciplined" as that term is used in 29 U.S.C. § 529 (doc. no. 6 at 8). Defendants point out that "not receiving a job application" and "not being hired" as a business agent for the union did not impair the plaintiffs' rights as union members. See Tucker, 900 F.2d at 978 (holding that Title I protects "membership rights," i.e., rights that are fundamental to union membership, as opposed to "job rights" that might arise from a union member's job as appointed union staff) (citing Finnegan, 456 U.S. at 438); Cehaich v. Intern'l, UAW, 710 F.2d 234, 238-240 (6th Cir. 1983) (explaining that the roles of

"union member" and "officer of the union" were distinct and did not necessarily affect each other). Like the plaintiffs in the present case, Cehaich was not fined, suspended, expelled or disciplined "in any manner which affected his right to fully enjoy the rights and privileges of union membership." Id. at 240.[2]

With respect to the plaintiffs allegation that the filing of internal union charges (and resulting proceedings) against them violated the LMRDA, defendants point out that the plaintiffs' own allegations reflect that those proceedings ultimately did not result in the imposition of any discipline by the union. Plaintiffs acknowledge in their Complaint that they were found "not guilty" of three charges and that a "guilty" finding on a fourth charge was reversed on administrative appeal (doc. no. 1, ¶¶ 25-27). Plaintiffs do not allege that they were fined, suspended, or expelled as union members as a result of these charges.

With respect to the plaintiffs' allegation that they were "disciplined" by not being referred work through the union hiring hall, the defendants cite Brieninger v. Sheet Metal, 493 U.S. 67 (1989), where the United States Supreme Court affirmed the Sixth Circuit's dismissal of a claim premised on the alleged denial of union work referrals. The Supreme Court held that the union member, who had alleged that two union officers failed to refer work to him because he supported their rivals, failed to state a claim against the union for violation of LMRDA's

---

[2] The present plaintiffs were not "removed" from employment, rather, they were simply not re-elected. Thus, the Supreme Court's decision in Sheet Metal v. Lynn does not require a different result. 488 U.S. 347 (1989) (holding that removal from an elected union position, in retaliation for statements made at a union meeting in opposition to a dues increase sought by the union trustee, could violate the "free speech" provisions of LMRDA).

prohibition against fining, suspending, expelling or otherwise disciplining members for exercising rights secured under LMRDA. The Supreme Court explained that, with respect to the phrase "otherwise discipline," Congress meant "to denote only punishment authorized by the union as a collective entity to enforce its rules." Id. at 91. The Supreme Court observed that "the specifically enumerated types of discipline-fine, expulsion, and suspension-imply some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." Id. at 91-92. The Supreme Court pointed out that "a hiring hall could hardly be expected to provide a hearing before every decision not to refer an individual to a job." Id. The Supreme Court concluded that the plaintiff's allegations about failing to refer work to him "did not allege acts by the union amounting to "discipline" within the meaning of the statute" and thus, affirmed dismissal of the claim. Id. at 95. Although the plaintiffs generally allege that they did not receive "substantial" work referrals after they disputed the delegate election and began exercising their rights under the LMRDA (see doc. no. 1 at ¶¶ 13, 17-19 referring to their activities beginning in 2007 and running through 2009), this largely coincided with the severe nation-wide recession that began in 2008.

In their response, plaintiffs interpret the statutory phrase "otherwise disciplined" very broadly. In fact, they rely largely on the same arguments found in the dissenting opinion in Brieninger, which suggested that a broader interpretation of the term "discipline" could include informal economic reprisal. Id. at 95-96 (dissenting opinion, indicating that "[r]etaliation effected through a union job referral system is a form of discipline" even if it is the result of informal

decisions by the union). While the dissent opined that the plaintiff's "allegation that the union's officers used their union-granted authority over the hiring hall to punish [plaintiff] for his union activities should . . . be sufficient to support the claim," the majority opinion in Brieninger held otherwise and remains binding law. Plaintiffs' complaint fails to state a cognizable claim for violation of LMRDA.

### B. Whether the Plaintiffs' Claim is Time-Barred

The defendants assert that the plaintiff's claim of alleged interference with job referrals, even if cognizable, is time-barred (doc. no. 6 at 12-13). Ohio's residual two year statute of limitations for personal injury claims applies to claims arising under the LMRDA. Ohio R.C. § 2305.10(A); Allgood v. Elyria United Methodist Home, 904 F.2d 373, 378 (6th Cir. 1990) (citing Reed v. United Transp. Union, 488 U.S. 319, 323 (1989) (holding that LMRDA claims were governed by state statutes of limitation)).

Defendants point out that the plaintiffs' claim arose prior to June 2009, but that plaintiffs did not file suit until February 2013. Defendants point out that West did not seek re-election in June 2009, had moved out of state to find work, and had joined a different Local Union and State Council in Pennsylvania. Defendants point out that after West joined a different local union, "he had no basis on which to expect referrals from the OVRCC." Id. at 13. As for McCarthy, the defendants point out that he alleges in the Complaint that he was not re-elected in 2009 and "shortly thereafter" took early retirement sometime in 2010 (doc. no. 1 at ¶ 18). Thus, McCarthy's cause of action would have expired by 2012. The plaintiffs did not file their Complaint in the present action until 2013.

When the allegations in a complaint affirmatively show that a claim is time-barred, dismissal under Rule 12(b)(6) is appropriate. Jones v. Bock, 549 U.S. 199, 215-16 (2007) ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547-48 (6th Cir. 2012), cert. denied, 133 S.Ct. 1239 (2013) (same). To the extent the plaintiffs base their claim on a lack of "substantial job referrals," their claim is untimely.

### C. Whether Collateral Estoppel Applies

Next, defendants assert that West's allegations are barred by collateral estoppel (doc. no. 6 at 10-12). In support, defendants cite the United States Supreme Court's decision in United States v. Utah Construction Co., 384 U.S 394, 422 (1966) ("when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."); see also, e.g., U.S. ex rel. Spectrum Control Systems, Inc. v. Staffco Constr., Inc., 107 Fed.Appx. 453, 456 fn. 1 (6th Cir. 2004) ("the determinations of quasi-judicial administrative bodies . . . are entitled to res judicata effect") (quoting Utah Construction, 384 U.S. at 421-22); Van Beneden v. Al-Sanusi, --- F.Supp.2d ----, 2014 WL 235214, *7 (D.D.C. 2014) ("It is axiomatic that administrative proceedings may collaterally estop relitigation in courts.").

Here, the record reflects that on March 21, 2011, West filed an NLRB charge against the OVRCC alleging that the January 2010 internal union charges were brought against him in "retaliation" for a previous NLRB charge. The

administrative law judge for the NLRB determined that the internal charges had "addressed only the financial records" and that the ongoing dispute "is simply about the financial records." Id. at 11 (quoting from ALJ's opinion, Ex. A at 13-14). West, who had ceased to be union officer in June 2009, was withholding financial records from the union. The union needed those documents to prepare certain required reports. After a full hearing, the NLRB complaint was dismissed in favor of the union. Plaintiffs may not repackage this claim and relitigate the identical issue that was necessary to the earlier decision. See Olchowik v. Sheet Metal Workers Int'l Ass'n, 875 F.2d 555, 557 (6th Cir. 1989) (observing that "an issue may be precluded notwithstanding the fact that the later action is brought under a different statute . . . a factual determination by the NLRB in an action under the NLRA may preclude a federal court, hearing a case under the LMRDA [Labor Management Reporting and Disclosure Act], from considering renewed dispute about that fact").

### D. Whether Plaintiffs May Sue the Successor Entity

Finally, defendants briefly argue that the Complaint fails to allege that the named union defendant (Local 136) "fined, suspended, expelled, or otherwise disciplined" the plaintiffs (doc. no. 6 at 10). As the defendants acknowledge that Local 136 is the successor to Local 113, and as this case is dismissible on several other grounds, this issue need not be further addressed.

### V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have extensively briefed the relevant

issues. The Court finds that the pleadings and exhibits are clear on their face, and that oral argument is not warranted. <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendants' "Motion to Dismiss" (doc. no. 6) is <u>GRANTED</u>. Each party shall bear their own costs. This case is TERMINATED and DISMISSED from the docket of this Court.

IT IS SO ORDERED.

       s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court